NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4645
_____

MICHAEL T. D'ALESSANDRO,
Appellant

v.

CITY OF NEWARK

_____

On Appeal from the United States District Court
For the District of New Jersey
(D.C. No. 08-cv-01886)
District Judge: Hon. Peter Sheridan

Submitted Under Third Circuit L.A.R. 34.1(a),
November 15, 2011

BEFORE:  FUENTES, CHAGARES, *Circuit Judges* and RESTANI,[*] *Judge*

(Opinion Filed:  December 13, 2011)
_____

OPINION OF THE COURT
_____

_____

    [*]      Honorable Jane A. Restani, Judge of the United States Court of
International Trade, sitting by designation.

FUENTES, *Circuit Judge*.

Appellant Michael D'Alessandro appeals from the District Court's order granting summary judgment in favor of his former employer, the City of Newark, on his federal and state claims for gender and age discrimination. We will affirm.

**I.**

As we write solely for the parties, we discuss only those facts necessary to our decision.

D'Alessandro was employed as an attorney in the City's Law Department from 2001 through 2006. He was over forty years old when he was hired. During his five years employed by the City, D'Alessandro was counseled repeatedly for his deficient performance. While employed by the Civil Litigation Section, Assistant Corporation Counsel Pidgeon, an approximately 60 year old male, wrote numerous memoranda detailing incidents of D'Alessandro's deficient performance. In 2002, at Pidgeon's request, he was transferred to the Municipal Prosecutor's Office, then headed by Albert Mrozik, an almost fifty year old male. In his four years there, his supervisors wrote multiple memoranda detailing his poor performance or and his violations of City policy. For example, on one occasion D'Alessandro was discovered to be practicing law privately, which is forbidden by City policy. The last such memorandum was written only a few months before he was terminated.

In September 2006, D'Alessandro was terminated. At his termination meeting he was informed that he was terminated because the City "wanted to go in a different

direction." Around the same time, another attorney, a black female over the age of 40, was also terminated. Later in 2006, five new attorneys were hired: one male and four females, one being over the age of 40. In 2007, the City hired eight male attorneys and nine female attorneys, with at least 3 of these attorneys over the age of 40. After exhausting his administrative remedies, D'Alessandro filed suit in district court. [2] In his suit, he alleged gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and age and gender discrimination in violation of New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.*

## II.

The same standard applies to D'Alessandro's state and federal gender and age discrimination claims. *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009) (federal age discrimination); *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 788 (3d Cir. 2007) (New Jersey law); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1065-66 (3d Cir. 1996) (en banc) (federal gender discrimination). As he offers no evidence of direct discrimination, his claims are analyzed under the *McDonell-Douglas* burden shifting analysis. *Smith*, 589 F.3d at 689. D'Alessandro bears the initial burden

---

[2]    The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment. Summary judgment is appropriate where "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute of material fact is a genuine issue when there is evidence sufficient to support a reasonable jury returning a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view the record in the light most favorable to D'Alessandro—the nonmoving party. *Id.*

3

of demonstrating a prima facie case of unlawful discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Then, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. *Id.* Finally, the burden of production returns to D'Alessandro to show by a preponderance of the evidence that this rationale is pretextual by submitting evidence which "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allow the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Id.* at 762. D'Alessandro must do more than demonstrate that the City made a wrong or mistaken decision, rather he must show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. *Id.* at 765.

Even if D'Alessandro were able to satisfy his prima facie burden, the City has articulated a legitimate, nondiscriminatory reason for his termination. It is undisputed that for his entire tenure with the City there were significant problems with his performance. Such a long history of poor performance satisfies the City's burden.

D'Alessandro presents no evidence that could lead a reasonable factfinder to conclude that these reasons were pretextual. He does not contend that the asserted instances of poor performance were fabrications. Rather, his sole evidence is that the City told him at his termination meeting that it was "going in a different direction" and it also terminated another employee who was over forty and African American, but female,

4

which on its face cuts against finding the City terminated him because of his gender. D'Alessandro argues that the City's proffered reason for terminating his employment differs from the reason it provided him at the meeting in which he was discharged. But the City's vague statement that it is changing direction is not inconsistent with its desire to move away from employees with the deficits exhibited by D'Alessandro. [3]  Nor does D'Alessandro dispute the truth of his documented performance deficiencies. Ultimately, his evidence is insufficient to discredit the City's justification for his termination or demonstrate that discriminatory animus was more likely than not a motivating factor in the City's decision. As D'Alessandro failed to rebut the City's legitimate, nondiscriminatory rationale for its termination of D'Alessandro, the District Court properly granted summary judgment in the City's favor.

III.

The order of the District Court will be affirmed.

---

[3]        D'Alessandro's reliance on this Court's decision in *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 284 (3d Cir. 2001) is misplaced. There, the college gave no less than five separate unrelated and inconsistent reasons for its termination decision. *Id.* at 282-83. The reason changed multiple times prior to Abramson's termination, then continued to change throughout the course of the litigation. *See id.*